UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

JODI PASCAL,
    Plaintiff,

v.

MIAMI JEWISH HEALTH SYSTEMS, INC.,
a Florida Not For Profit Corporation,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JODI PASCAL ("Ms. Pascal" or "Plaintiff") files this Complaint against Defendant, MIAMI JEWISH HEALTH SYSTEMS, INC., ("MJH" or "Defendant"), and states as follows:

## INTRODUCTION

1. Plaintiff brings this action pursuant to the Family and Medical Leave Act, as amended, 29 U.S.C. § 2601, et seq. ("the FMLA").

2. Plaintiff is seeking damages including back pay, front pay, compensatory damages, liquidated damages, declaratory relief, and her attorneys' fees and costs.

## JURISDICTION, VENUE AND FMLA COVERAGE

3. The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1337 and the FMLA and the authority to grant declaratory relief under the FMLA, and pursuant to 28 U.S.C. § 2201 *et seq.*

4. At all times relevant hereto, Plaintiff was an employee of Defendant and worked for Defendant in Miami-Dade County, Florida.

5. At all times relevant, Defendant was an employer covered by the FMLA, because it was engaged in commerce, or in an industry affecting commerce, who employed fifty (50) or more employees within seventy-five (75) miles of where Plaintiff worked, for each working day during each of twenty (20) or more calendar workweeks during the relevant period of time.

6. At all times relevant hereto, Plaintiff was an employee entitled to leave under the FMLA, based on the fact that she: (a) necessitated medical leave for her serious medical condition; and (b) she was employed by Defendant for at least 12 months and worked at least 1,250 hours during the relevant 12-month period prior to her seeking to exercise her rights to FMLA leave.

## FACTUAL ALLEGATIONS

7. Ms. Pascal, worked for MJH, most recently as Director of Clinical Education for four (4) years, from March of 2013 until her termination on May 21, 2020.

8. Prior to her role as Director of Clinical Education, Ms. Pascal had been Manager of MJH's Clinic, and had been Manager of the MJH Douglas Gardens Hospital.

9. In late March of 2020, Ms. Pascal's direct supervisor, Stephanie Cosden, Associate VP of Operations, told Ms. Pascal that Ms. Pascal had been exposed to the corona/COVID-19 virus.

10. Ms. Cosden informed Ms. Pascal that MJH had ordered Ms. Pascal to be quarantined and tested for the virus.

11. Approximately two (2) days later, Ms. Pascal was called on the phone by one of MJH's physicians, Dr. Eric Pesetsky.

12. Dr. Pesetsky ordered Ms. Pascal to get tested for corona/COVID-19 virus and also inquired with Ms. Pascal whether she was exhibiting any symptoms of illness.

13. At that time, Ms. Pascal advised MJH, through Dr. Pesetsky, that on March 26, 2020, she had been prescribed prednisone by her personal physician to treat and address an ongoing serious health condition, bronchitis and suspected sinus infection.

14. This disclosure should have prompted MJH to advise Ms. Pascal of her rights and obligations under the FMLA.

15. MJH did not do so, and its failure to do so constituted interference under the FMLA.

16. Ms. Pascal was tested for corona/COVID-19 on March 31, 2020, and was pleased to learn, on Friday, April 3, 2020, that she had tested negative for the virus.

17. However, she was still exhibiting symptoms of her sinus infection and/or bronchitis.

18. Ms. Pascal's personal physician therefore prescribed Ms. Pascal antibiotics at about this same point in time.

19. During April of 2020, Advanced Registered Nurse Practitioners employed by MJH, including Ms. Wolf, were checking in with Ms. Pascal periodically and asking her about her condition.

20. Ms. Pascal kept MJH apprised of her ongoing serious health condition throughout April of 2020, *via* these discussions.

21. Ms. Pascal also informed Cassandra Joseph in MJH's Human Resources Department, and MJH's Vice President of People Development, Elisa Hernandez, and Erica Lopez, Director of Risk Management, on multiple occasions, including on April 9, 2020, and April 24, 2020, about her serious health condition, the fact that her personal physician wished her to remain home until her symptoms abated, and her expected return to work.

22. As noted above, these reports were in addition to Ms. Pascal's numerous reports to Ms. Wolf and to MJH's other Advanced Registered Nurse Practitioner.

23. In none of these instances did MJH advise Ms. Pascal of her rights and responsibilities under the FMLA, which constituted further actionable FMLA interference.

24. Plaintiff was permitted to work from home, until on or about April 29, 2020, or April 30, 2020, Ms. Cosden informed Ms. Pascal that she expected Ms. Pascal to return to work on May 4, 2020.

25. In response, Ms. Pascal explained that her physician had not yet cleared her to return to work, and that she would not have access to her physician until May 1, 2020, or May 4, 2020, at the earliest.

26. After speaking with Ms. Cosden, Ms. Pascal took May 4, 2020 off, using paid time off, as suggested by Ms. Cosden, and was cleared to return to work on May 5, 2020, by her physician.

27. Ms. Pascal returned to work on May 5, 2020.

28. On May 21, 2020, MJH's Vice President of Human Resources, Rae Bullard, and its Vice President of Operations, Jason Pincus, walked into Ms. Pascal's office.

29. At that time, Ms. Pascal was informed that MJH had decided to terminate her employment, effective immediately.

30. The timing of Plaintiff's termination, after her disclosure of serious medical condition, and after using what should have been protected FMLA leave, demonstrates that Defendant interfered with and retaliated against Ms. Pascal for attempting to exercise her FMLA rights.

31. Moreover, because Defendant acted with intent to interfere with, and otherwise retaliate against Plaintiff for her use of what should have been FMLA leave Defendant's actions likewise constitute FMLA retaliation.

32. Defendant's stated reason for Plaintiff's termination is a pretext, designed to cover up FMLA interference and retaliation.

33. The timing of Plaintiff's attempted use of protected FMLA leave, and Defendant's termination of her employment, alone demonstrates a causal and temporal connection between her protected activity, and the illegal actions taken against her by Defendant.

34. As a result of this illegal conduct, Plaintiff has suffered damages, including loss of employment, wages, benefits, and other remuneration to which she is entitled.

35. Defendant did not have a subjective or objective good faith basis for its actions, and Plaintiff is therefore entitled to liquidated damages.

## COUNT I- UNLAWFUL INTERFERENCE UNDER THE FMLA

36. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1-35 above.

37. At all times relevant hereto, Plaintiff was protected by the FMLA.

38. At all times relevant hereto, Plaintiff was protected from interference under the FMLA.

39. At all times relevant hereto, Defendant interfered with Plaintiff by refusing to allow Plaintiff to exercise her FMLA rights *via* not advising Plaintiff of her FMLA rights.

40. As a result of Defendant's willful and unlawful acts by interfering with Plaintiff in her attempt to exercise her rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

41. As a result of Defendant's willful violation of the FMLA, Plaintiff is entitled to liquidated damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

## COUNT II- RETALIATION UNDER THE FMLA

42. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1-35, above.

43. At all times relevant hereto, Plaintiff was protected by the FMLA.

44. At all times relevant hereto, Plaintiff was protected from retaliation under the FMLA.

45. At all times relevant hereto, Defendant retaliated against Plaintiff by firing her for her attempted use of FMLA protected leave or for her use of what should have been FMLA protected leave.

46. Defendant acted with the intent to retaliate against Plaintiff, because Plaintiff sought to exercise her rights to take leave pursuant to the FMLA.

47. As a result of Defendant's intentional, willful and unlawful acts by retaliating against Plaintiff for her attempted use of FMLA protected leave or for her use of what should have been FMLA protected leave, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

48. As a result of Defendant's willful violation of the FMLA, Plaintiff is entitled to liquidated damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

DATED this 19th day of January 2021.

            Respectfully Submitted,

            By**:***/s Noah E. Storch*
            Noah E. Storch, Esq.
            Florida Bar No. 0085476
            Richard Celler Legal, P.A.
            10368 West State Road 84, Suite 103
            Davie, Florida 33324
            Telephone:  (866) 344-9243
            Facsimile:   (954) 337-2771
            E-mail: noah@floridaovertimelawyer.com
            *Attorneys for Plaintiff*